**In The United States District Court For The District Of Kansas**

| | |
|---|---|
| Dr. Jarod Grove, § <br>     Plaintiffs, § <br>     v. § <br> § <br> Hays Medical Center, Inc., § <br>     Defendant. § <br> § | Case No. _____ |

## COMPLAINT

COMES NOW Plaintiff Dr. Jarod Grove ("Dr. Grove" or "Plaintiff"), and for his Complaint against the above-named Defendant, respectfully alleges as follows:

### JURISDICTION AND VENUE

1. Plaintiff brings this antitrust action pursuant to 28 U.S.C. §1331, and related Kansas statutory and common law.

2. Jurisdiction is conferred on this Court by 28 U.S.C. §§1331 which provide for original jurisdiction in this Court of all suits brought under the Constitution, laws, or treaties of the United States.

3. This Court has subject-matter jurisdiction over the remaining claims under 28 U.S.C. §1367.

4. This Court has personal jurisdiction over the Defendant because it resides and conducts its operations in this District.

5. Venue is proper in this Court pursuant to 28 U.S.C. §1391, because the events and circumstances alleged occurred in Greeley County, Kansas.

1

## PARTIES

6. Plaintiff Dr. Jarod Grove ("Plaintiff" or "Dr. Grove") is an individual who resides in Hays, Kansas. He is a citizen of the State of Kansas.

7. Defendant Hays Medical Center, Inc. ("Hays Med")is a Not-for-Profit Corporation located at 2220 Canterbury, Hays KS 67601. Hays Med is a citizen of the State of Kansas.

8. Hays Medical Center has ownership interests in the Hays Medical Center in Hays, KS and an ancillary facility in Pawnee County.

## FACTUAL BACKGROUND

9. Dr. Jarod Grove is a physician who was employed at Hays Medical Center until Tuesday, November 12, 2024.

10. Dr. Grove provides general surgery services on patients, seeing approximately one thousand (1,000) cases per year.

11. Dr. Grove's services make up approximately seventy-seven percent (77%) of the general surgical cases performed at Hays Medical Center, and other associated clinics. In other words, Dr. Grove's services are indispensable for the residents of western Kansas.

12. Dr. Grove's services include surgery for cancer, bowl and rectal treatments, emergency trauma surgery, breast cancer surgery, thyroid surgery and treatment, abdominal surgery, and other necessary or emergency surgeries on a case-by-case basis. Dr. Grove is also one of the

only surgeons in western Kansas who provides, and assists, with complex surgical procedures.

13. Dr. Grove's treatment has saved the lives of numerous patients, both in the short and long term.

14. Dr. Grove was employed at Hays Medical Center for nearly nine and a half years.

15. During his time in western Kansas, Dr. Grove has built a robust and widely known practice based on his reputation for providing excellent medical care to underserved parts of the state.

16. Dr. Grove has provided surgical services for facilities located in Hays, Oakley for two (2) years, WaKeeney for nine (9) years, Scott City for five (5) years, Tribune for four (4) years and Ellenwood.

17. During his time at Hays Medical Center, he has been a president of the Kansas Chapter of the American College of Surgeons, Chief of Surgery, and served on the Hays Medical Center board.

18. Like most of the people who live in western Kansas, Dr. Grove lives here because he loves the community and feels a strong bond with both the members of the various locations he has worked in, but more importantly the relationship he has built with his patients over the years.

19. During his time at Hays Med, Dr. Grove began to notice certain troubling aspects of the treatment of Hays Med staff. Various issues were brought to

his attention, and ultimately, he felt the best course of action was to resign his employment.

20. As a part of Dr. Grove's appointment, he signed an employment agreement with Hays Med ("the Agreement") that contained a number of clauses including a "restrictive covenant". ("the Covenant")

21. The restricted covenant provided as follows:

22. During the term of this Agreement, and for a period of two (2) years after Physician's employment by Hospital is terminated for any reason, either by Hospital or physician, with or without cause, including the expiration of the term of this Agreement, Physician will not , within a one hundred and ten (110) mile radius in any direction from the city limits of Hays, Kansas , and within thirty (30) miles in any direction from the city limits of any other city or town where Physician performs services on behalf of the Hospital under this Agreement, without the prior consent of Hospital, engage in the practice of medicine, or directly or indirectly, own, manage, operate, control be employed by, invest in, participate in advise, consult with, or be connected with the ownership management, operation or control of any entity engaged in the practice of medicine. Physician agrees that in addition to all other remedies otherwise available to Hospital, Hospital will have the right to injunctive relief to restrain and enjoying any actual or threatened breaches of this provisions and that, if in any litigation that might arise over the provisions contained in this

4

paragraph, a court should determine that the restrictions contained in this paragraph are too long in duration, or too broad in geographic scope to be enforceable in equity , such provisions as such court might find unenforceable are amended only so much as will be necessary in order for the restrictions contained herein to be enforceable and , as so amended, will be enforced by such court. Physician represents and acknowledges that Physician's experience and/or abilities are such that observance of this restrictive covenant will not cause Physician undue hardship and will not unreasonably interfere with Physicians ability to earn a living. The covenants and agreements contained in this paragraph will survive in the termination of this Agreement for any reason.

23. On August 14th Dr. Grove met with Hospital Leadership and submitted his resignation letter.
24. Subsequently, on August 29th, there was an additional conversation with hospital leadership whereby they discussed additional terms and conditions for Dr. Grove's resignation. During that conversation Dr. Grove's contract was brought up. Specifically, the restrictive covenant.
25. During this discussion Dr. Grove noted that he provided services to a number of hospitals, and any such covenant would create a health care access issue. Dr. Grove was informed by leadership that enforcement of the covenant was a directive of the Board.

26. His concern regarding rural access to critical services was ignored and disregarded.

27. Subsequently, an email was sent approximately one week after the discussion to acknowledge the conversation was brief. But the position of the Board was that the Covenant was to be enforced, and exceptions requested by Dr. Grove were not granted.

28. During the interim, Dr. Grove executed an agreement with Greeley Health, to work in their Tribune location. Subsequently, Hays Med sent an email to both Dr. Grove and Tribune informed the, that Dr. Grove was unable to work at the Hospital due to the non-compete.

29. This has led to a situation whereby Dr. Grove is unable to provide medical services to nearly half of the state of Kansas, and more importantly, nearly no part of western Kansas. (Exhibit 1).

30. In other words, the prevention of Dr. Grove from providing his services in western Kansas is likely to significantly reduce access to medical care in western Kanas, and more specifically may cost someone their life.

## COUNT I:
## SHERMAN ACT VIOLATION SECTION 1

31.     The allegations in the above paragraphs are incorporated by reference.

32. Any agreement that unreasonably restrains competition is unlawful under the Sherman Act, Section 1.

33. Access to health care in rural America, and specifically in western Kansas, is currently under stress.

6

34. For example, in the state of Kansas there are four hundred and thirty-five surgeons, with only eleven in western Kansas, including Dr. Grove.

35. The ten (10) surgeons in western Kansas include one temporary surgeon in Sherman County, two in Thomas County, one permanent surgeon in Garden City, three in Seward County, one in Clark County, and one recently hired in Dodge City.

36. Surgeons in Kansas, like Dr. Grove, are generally trained in larger metro areas. They then go on to make a decision to return to the communities they have roots in, such as family, in order to give back to their communities.

37. These surgeons seek to stay in their communities, even if they move locations.

38. But Hays Med, as noted *supra*, contains restrictive covenants. These covenants are extremely restrictive in nature, and effectively remove all ability for Physicians, or staff, who work at Hays Med to ultimately work or provide services in western Kansas after their employment.

39. Under the terms of the restrictive covenant, the prohibition on Dr. Grove's employment extends north into Nebraska, east into Colorado, and nearly to the southern boarder of Kansas.

40. Effectively eighty percent (80%) of western Kansas, including all the places Dr. Grove has developed relations with and provided services to, are no longer available to Dr. Grove.

41. Western Kansas already has a significant dearth of providers, with only two and one half percent (2.5%) of the surgeons in Kansas.

42. Further, a drain on health care has further strained medical accessibility. For example, over the past few years Hays Med has lost twelve (12) physicians, two Certified Registered Nurse Anesthetists, and three midlevel processions. None of which have remained in the region and provide services to the residents of the western half of the state.

43. Services impacts include cardiology, urology, orthopedics, OB/GYN, Hospitalists, oncology, nephrology and general family medicine.

44. This, in addition to shrinking coverage from hospitals in Dodge City and Garden City, along with staffing issues in other facilities, heath care in western Kansas will become increasingly difficult to find.

45. Without these services, the residents of western Kansas will be severely affected, and the toll is already beginning to show.

46. Of note, Dr. Grove is unable to practice any medicine at any of those facilities. The Covenant would effectively ban him from the practice of medicine within the covenant coverage area.

47. Defendant Hays Med exercises market power in the market for healthcare, and specifically for surgery, in Western Kansas.

48. Due to the sparse population and the distances at issues in Western Kansas the market power of Defendant Hays Med is amplified because it is

impractical for patients to travel into other markets outside of the reach of the employment agreements of Defendant Hays Med to seek care.

49. The employment agreement between Hays Med and Dr. Grove restricts trade by restricting the amount of medical care, and specifically surgery, that can be provided in the market of Western Kansas.

50. Said employment agreement represents a conspiracy at least between Hays Med and each of its officers and members of its Board to restrict trade as described above.

51. The restraint of trade imposed by the employment agreement of Defendant Hays Med is unreasonable as described in more detail above.

52. As stated above, the conspiracy represented by the employment agreement of Defendant Hays Med affects interstate commerce, *inter alia*, in that its restrictions reach from Kansas into both Colorado and Nebraska, as described above.

53. The employment agreement of Hays Med harms consumers in Western Kansas, Eastern Colorado, and Southern Nebraska, *inter alia*, by restricting their choice of health care providers, specifically including surgeons, and both increasing costs and decreasing quality due to the restrictions on consumer choice.

54. The employment agreement of Hays Med harms Plaintiff, *inter alia*, by restricting his income, by restricting his choice of locations in which he may provide health care, specifically including surgery, and by decreasing his

9

ability to compete in the healthcare markets of Western Kansas, Eastern Colorado, and Southern Nebraska.

55. WHEREFORE Plaintiff prays for Order against the Defendants finding them in violation of the Sherman Antitrust Act Section 1; awarding damages in an amount to be determined at trial, including treble damages; finding that the Covenant unlawful; entering an injunction prohibiting Defendant from enforcing said covenant; and for any other relief this Court deems just and proper.

## COUNT II:
## SHERMAN ACT VIOLATION SECTION 2

56. The allegations in the above paragraphs are incorporated by reference.

57. Hays Med exercises monopoly power in the healthcare market, and specifically the surgery market, in Western Kansas.

58. Hays Med has intentionally and willfully acquired and maintained this monopoly power, *inter alia*, through its use of restrictive covenants in its employment agreements that unreasonably restrict competition and consumer access to surgeons and other healthcare professionals in the markets in which Hays Med operates.

59. Hays Med uses its monopoly power to harm consumers by, inter alia, restricting their choice of healthcare providers, specifically including surgeons, as well as both increases consumer costs and decreasing service quality by restricting consumer choice and the ability of surgeons and other

healthcare providers to compete in the markets in which Hays Med exercises its monopoly power.

60. Hays Med, as in the case with Dr. Grove, uses the non-compete clauses to ensure that physicians that otherwise would stay in the community, are unable to do so and thus must either uproot their lives and leave the community altogether or continue working at Hays Med.

61. Hays Med further uses the Covenants as negotiating leverage, to unilaterally determine where physicians may, or may not practice upon leaving Hays Med.

62. In the instant case, Hays Med, during negotiations, informed Dr. Grove that he would be "allowed" to practice in certain areas, but only if he provided certain services to Hays Med in exchange for Hays Med "waiving" the Covenant.

63. As Hays Med is both one of the largest, and only, providers of healthcare services in western Kansas, they have significant market power and further utilize the Covenants as bargaining tools to ensure Physicians do not have any ability to compete, as well as ensuring that other hospitals cannot compete for the service providers.

64. Effectively, Hays Med uses these Covenants as leverage to ensure they control both where providers may work, as well as what providers the few other medical facilities in western Kansas may hire.

65. Hays Med, as is the case with Dr. Grove, uses the non-compete clauses to ensure that physicians that otherwise would stay in the community, are unable to do so and thus must either uproot their lives and leave the community altogether or continue working at Hays Med.

66. Hays Med further uses the Covenants as negotiating leverage, to unilaterally determine where physicians may, or may not practice upon leaving Hays Med.

67. In the instant case, Hays Med, during negotiations, informed Dr. Grove that he would be "allowed" to practice in certain areas, but only if he provided certain services to Hays Med in exchange for "waiving" the Covenant.

68. As Hays Med is both one of the largest, and only, providers of healthcare services in western Kansas, they have significant market power and further utilize the Covenants as bargaining tools to ensure Physicians do not have any ability to compete, as well as ensuring that other hospitals cannot compete for the service providers.

69. Effectively, Hays Med uses these Covenants as leverage to ensure they control both where providers may work, as well as what providers the few other medical facilities in western Kansas may hire.

70. Due to Plaintiff's attempt to unlawfully impose the Covenant, it has attempted to monopolize providers and the services they render.

71. WHEREFORE Plaintiff prays for Order against the Defendants finding them in violation of the Sherman Antitrust Act Section 2; awarding

damages in an amount to be determined at trial, including treble damages; finding that the Covenant is unlawful; entering an injunction prohibiting Defendant from enforcing said Covenant; and for any other relief this Court deems just and proper.

## COUNT III: DECLARATORY JUDGMENT

72. The allegations in the above paragraphs are incorporated by reference.
73. The Kansas Declaratory Judgment Act exists to allow judicial resolution to disputes and provide certainty to the rights and obligations of parties to, among other things, contracts.
74. The practices of Hays Med, as applied to Dr. Grove and others, ensure that a shortage of physicians exists in western Kansas, and ensure that the Covenant used by Hays Med is contrary to the public interest and should not be enforced.
75. A covenant that places an undue burden on a physician's right to practice medicine is unlawful and shall not be enforced.
76. Further, a covenant that creates a shortage of physicians is injurious to public welfare.
77. Hays Med's practices only seek to prevent employees from working at other health care facilities. To state it another way, these Covenants are used to create somewhat of a monopoly and do not protect any legitimate business interests for the hospital.
78. The covenants create a situation whereby rural physicians are unable to go anywhere else in western Kansas and eliminate broad swaths of Kansas altogether.
79. As evidenced by available data, western Kansas already has a dearth of physicians

able to provide the services Dr. Grove provides.

80. Enforcement of the covenant will remove nearly 1/10 of all available physicians, and further reduce access to critical care services.

81. Such a provision, in addition to being contrary to public policy and injurious to the public welfare, is unconscionable.

82. The contract clause would deprive residents on the western half of the state of Kansas the ability to seek, and receive, necessary or urgent care.

83. WHEREFORE Plaintiff prays for Order against the Defendants finding the Covenant no to complete is injurious to the public welfare, unconscionable, and void for public policy reasons. Plaintiff respectfully request the Court award damages in an amount to be determined at trial, including treble damages; find that the Covenant is unlawful; enter an injunction prohibiting Defendant from enforcing said covenant; and award any other relief this Court deems just and proper.

## COUNT IV: INJUNCTIVE RELIEF

84. The allegations in the above paragraphs are incorporated by reference.

85. Plaintiff is forced to seek an injunction in this matter.

86. Defendant has indicated that it will seek an injunction prohibiting Plaintiff from practicing medicine.

87. Therefore, Defendant must seek an injunction in this matter to ensure continuity of care in western Kansas.

88. Defendant has signed a contract with Greeley Health Services in order to ensure the residents of western Kansas are provided with care during the

pendency of this action.

89. Defendant's claims provide a sound basis for this action and Plaintiff is likely to succeed on the merits.

90. Plaintiffs with each suffer irreparable harm as Greeley County will be without access to a critical piece of its health care infrastructure and will be unable to provide services such as emergency trauma care, cancer surgery, and other various medical services provided by Dr. Grove.

91. Dr. Grove will be irreparably harm as he will be unable to practice medicine in western Kansas and would be required to leave the state.

92. There is no harm to anyone but the Plaintiff if Dr. Grove is unable to practice medicine. Hays Med is aware of Dr. Grove's resignation and has been for some time. They have had ample time to mitigate their damages, and it is their responsibility to ensure continuity of care at their hospital as they had reasonable notice of Dr. Grove's departure.

93. Further, any alleged business relationship or interest that Hays Med may have that could potentially be impacted is one that was developed by Dr. Grove, via the physician patient relationship.

94. However, the public will also suffer significant harm as this will further reduce access to health care in rural areas.

95. Finally, the public interest clearly calls in favor of ensuring that residents of western Kansas are afforded necessary access to critical services.

96. As the dearth of available surgeons already poses significant problems, this

will further strain resources and cause broader harm to the public at large.

97. WHEREFORE Plaintiff prays for Order against the Defendants finding the Covenant no to complete is injurious to the public welfare, unconscionable, and void for public policy reasons. Plaintiff respectfully requests the Court award damages in an amount to be determined at trial; find that the Covenant is unlawful; enter an injunction prohibiting Defendant from enforcing said Covenant; and award any other relief this Court deems just and proper.

WHEREFORE, Plaintiff prays against Defendants for the following judgments:

A. That the Covenant violates the Sherman Act, Section 1;

B. That the Covenant violates the Sherman Act, Section 2;

C. A Declaration that the Covenant is void and enforceable as a matter of public policy, that it is unconscionable, and that it is injurious to the public welfare in addition to placing an unreasonable restraint on Dr. Grove's ability to practice medicine;

D. An injunction allowing Dr. Grove to continue to practice medicine in western Kansas during the pendency of this action;

E. For damages to be decided at trial, including treble damages;

F. For attorneys' fees pursuant as allowed under Kansas law, and any other appropriate statute;

G. For costs of this action;

H. For such other relief as the court may deem just and proper.

## PLACE OF TRIAL

98. In accord with Local Rule 40.2(a), Plaintiffs hereby designate Kansas City, Kansas as the place of trial in this matter.

## JURY DEMAND.

99. Plaintiff demands a jury trial on all issues so triable.

Respectfully submitted,

**/s/Christopher J. McGowne**
Christopher J. McGowne, #29056
Craig L. Uhrich, #20618
MCGOWNE UHRICH LLC
222 Center Avenue
Oakley, Kansas  67748
(720) 878-7688
cjmcgowne@gmail.com
craig.uhrich@gmail.com

*Attorney for Plaintiff*